UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David "Cammie" Cameron,

       Plaintiff,

       v.

Lisa Menard, Former Commissioner,
Vermont Department of Corrections; Mark
Potanas, Former Superintendent, Southern
State Correctional Facility; Joshua
Rutherford, Chief of Security, Southern State
Correctional Facility,

       Defendants.

Civil Action No. 5:18–cv–204-gwc-kjd

## <u>OPINION AND ORDER</u>
(Doc. 44)

Plaintiff David "Cammie" Cameron, a transgender female who was a prisoner at the

Southern State Correctional Facility (SSCF) during the period relevant to this lawsuit, has

brought this action under 42 U.S.C. § 1983, against Defendants Lisa Menard, the former

Commissioner of the Vermont Department of Corrections (DOC); Mark Potanas, the former

superintendent of SSCF; and Joshua Rutherford, the Chief of Security at SSCF.  Cameron alleges

that, despite "identif[ying] as female and [being] feminine in her appearance" during the relevant

period (Doc. 1 at 1, ¶ 2), Defendants ignored her request to be incarcerated with female inmates,

instead housing her with male inmates and placing inmate Francis Lajoice in a cell next to hers,

resulting in Lajoice's physical assault of Cameron.  According to the Complaint, Cameron was

severely beaten by Lajoice; and ridiculed, threatened, and harassed by male inmates and

correctional officers at SSCF.  (*Id.* at 3.)  Cameron claims Defendants' conduct violated her

Eighth Amendment right to "reasonable safety and humane conditions of confinement."  (*Id.* at 4, ¶ 20.)

## Procedural Background and Pending Motion

Pursuant to this Court's September 2019 Order, the sole remaining claim in Cameron's Complaint is that Defendants failed to protect her from a substantial risk of harm.  (Doc. 19 at 2; *see* Doc. 18 at 14–22.)  Specifically, the Complaint alleges that, by housing Cameron with the male inmate population at SSCF and by placing inmate Lajoice in a cell next to Cameron, all three Defendants knowingly disregarded the general risks that Cameron faced as a transgender female housed with male inmates at SSCF, and Defendants Potanas and Rutherford disregarded the specific risk that Lajoice posed to Cameron.  (Doc. 1 at 2–5.)

Since April 2020, counsel for Cameron and counsel for Defendants Menard and Rutherford have been engaging in discovery, but they have reached an impasse.  Accordingly, now pending before the Court is Cameron's Motion to Compel Discovery and to Extend Discovery Deadlines.  (Doc. 44.)  Cameron seeks an order compelling Defendants Menard and Rutherford (collectively, "Defendants") to provide further responses to the Interrogatories and Requests for Production of Documents (RFPDs) propounded on them by Cameron, on the grounds that: (1) Defendants' objections to the Interrogatories are improper; (2) Cameron is entitled to discover (a) the personnel files of, and documents related to any complaints made against, 13 SSCF correctional employees, which includes Defendant Rutherford and 12 correctional officers who responded to the subject attack, and (b) the DOC/SSCF's entire file on inmate Lajoice, and all records referring or relating to allegations of prior incidents of physical or sexual assault committed by Lajoice; (3) Cameron's counsel should be allowed to visit SSCF in an effort to understand the layout and logistics of the areas where Cameron was harassed and beaten; and (4) Defendants should be ordered to sign their discovery responses

under oath. (*Id.* at 4–10.) In addition, Cameron seeks an extension of the pending discovery deadlines, particularly those pertaining to depositions and expert witnesses. (*Id.* at 11, ¶ 27.) Defendants oppose Cameron's Motion, contending that they have fully and appropriately responded to all written discovery and that there is no reason to enlarge the discovery schedule. (Doc. 49.)

As explained below, Cameron's Motion (Doc. 44) is GRANTED in part and DENIED in part.

<u>**Analysis**</u>

## I.    Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), "discovery may be had regarding any matter relevant to the subject matter involved in the action." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 127 (N.D.N.Y. 1984). Specifically, Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The Rule further states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* This provision is "an explicit recognition that the question of relevancy is to be more loosely construed at the discovery stage than at the trial." *Inmates of Unit 14*, 102 F.R.D. at 127; *see Engl v. Aetna Life Ins. Co.*, 139 F.2d 469, 472 (2d Cir. 1943) (holding that documents may be discovered "not merely for the purpose of producing evidence to be used at the trial, but also for discovery of evidence, indeed, for leads as to where evidence may be located").

"Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14*, 102 F.R.D. at 128 (citing *Kinoy v. Mitchell*, 67 F.R.D. 1, 12 (S.D.N.Y. 1975)). "It has been strongly stated that suits under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather than a determination that the truth shall remain hidden." *Id.*; *see Marshall v. N.Y.C. Transit Auth.*, No. 84 CIV. 1033 (LBS), 1984 WL 380, at *5 (S.D.N.Y. May 24, 1984) ("[T]he policy of full disclosure is particularly compelling in a case, such as this, where the plaintiff is alleging violation of his constitutional rights and seeking relief under the Civil Rights Act."). In deciding discovery disputes, courts should give particular consideration to the importance of the evidence to each party's claims and defenses. *Inmates of Unit 14*, 102 F.R.D. at 128; *see Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

On a motion to compel discovery, "it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, No. CV 09–601(ADS)(AKT), 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009). And it is the discovering party who "has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974); *see Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

The party opposing discovery on relevance grounds must demonstrate that "the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure." *Du Grenier v. Encompass Ins. Co.*, Case No. 2:16-cv-281, 2018 WL 4692354, at *4 (D. Vt. May 11, 2018)

(quoting *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 176 (S.D.N.Y. 2012)); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery."). The objecting party "must do more than simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Young v. McGill*, No. 3:09-CV-1186 (CSH), 2013 WL 5962090, at *2 (D. Conn. Nov. 6, 2013) (alteration in original) (internal quotation marks omitted). The objecting party "bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome[,] or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011) (first alteration in original) (internal quotation marks omitted).

"District courts have broad discretion when addressing motions to compel discovery." *Edwards v. Middleton*, No. 19 Civ. 1362 (VB)(JCM), 2021 WL 961762, at *3 (S.D.N.Y. Mar. 15, 2021) (citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)). "The Court also has broad discretion in determining relevance for discovery purposes." *Id.* (internal quotation marks omitted).

## II. Discussion

### A. General Objections to Interrogatories

Cameron contends that Defendants' "[b]oilerplate objections followed by responses that purport to preserve the objections" are "evasive, lack candor, and are essentially worthless." (Doc. 44 at 5, ¶ 18.) She argues that Defendants may not object to an interrogatory, but then answer subject to the objection. (*Id.*) According to Cameron, these types of objections are not permitted under the Federal Rules of Civil Procedure, and thus the Court should "deem

the[m] . . . waived and order that full unqualified responses be required, so that [Cameron] can be assured no evidence is being withheld."  (*Id.* at 6, ¶ 19.)

The Federal Rules of Civil Procedure permit the recipient of interrogatories to raise objections.  *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.").  Indeed, a party's failure to object in a timely manner may result in waiver of the objection.  *See* Fed. R. Civ. P. 33(b)(4).  Therefore, the Rules contemplate that a party may both object and answer an interrogatory.  *See Norton v. Knapheide Equip. Co.*, Case No. 4:18-cv-01615-SNLJ, 2019 WL 3082631, at *1 (E.D. Mo. July 15, 2019) (acknowledging criticism of the practice, but holding that answering subject to objection is consistent with "Federal Rule of Civil Procedure 33, which explicitly envisions a mixture of answer and objection").  Similarly, the Rules permit the recipient of requests for production of documents to object, so long as the objection is "state[d] with specificity."  Fed. R. Civ. P. 34(b)(2)(B).  The Rules further require that the objecting party must "state whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C).

Cameron served nine Interrogatories on Defendants.  Having reviewed each Interrogatory, its corresponding response, and the subsequent written communication between counsel, the Court finds that Defendants' responses are proper.  Review of a representative example demonstrates their propriety.  Interrogatory No. 1 reads: "As to each statement in the Complaint which you denied, state what you believe the true facts to be."  (Doc. 49-4 at 1.) Defendants object on the grounds that the Interrogatory is "vague and ambiguous and calls for legal conclusions and analysis as well as privileged/confidential work product."  (*Id.*) Defendants' response explained the basis of its objection: "A denial of an allegation in a

Complaint does not mean that there is a directly corresponding 'true' statement." (*Id.*) When

Cameron sought the evidentiary basis for Defendants' responses to Interrogatory No. 1, defense

counsel clarified in detail Defendants' responses to the Interrogatory. (*See, e.g.*, Doc. 44-7 at

1–3 (November 9, 2020 correspondence providing specific answers to Cameron's questions

regarding Defendants' responses to Interrogatory Nos. 1–6 and 9.).)[1] The Court finds this

response, which exemplifies Defendants' responses to Cameron's Interrogatories generally, to be

proper.

Other than Cameron's disagreement with Defendants' answering the Interrogatories

subject to objection, she does not point to a specific deficiency in the Interrogatory responses

provided nor a particular concern about information or evidence that may have been withheld.

Accordingly, the Court DENIES Cameron's requests to deem Defendants' objections waived and

to order service of unqualified responses.

## B. Cameron's Requests for Production of Documents

Cameron seeks to compel Defendants to produce documents listed in the following

contested RFPDs:

RFPD No. 7

> Any and all documents that comprise or are part of the personnel file, including the
> disciplinary record, and any other documents concerning the hiring, training, duties,
> performance, assignments, and mental and physical condition of Joshua
> Rutherford, Caroline Marsh, Michaela Merrill, Michael Groner, Jason Hurd, Dylan
> Secoy, Kevin Jenkins, Sean Doyle, Michael Simonds, Anthony Connolly, Nathan
> Wielosinski, Brandan Gallant, and Howard Brooks.

(Doc. 49-3 (RFPDs) at 11.)

---

[1] Cameron acknowledges that defense counsel "has conscientiously and thoroughly responded in good
faith" to counsel's inquiries regarding discovery responses. (Doc. 44-2 at 1, ¶ 1(a) (Affidavit of Counsel in Support
of Plaintiff's Motion to Compel Discovery)).

RFPD No. 8

> Any and all documents concerning or in any way relevant to, any formal or informal complaint made against or about Lisa Menard, Mark Potanas, Joshua Rutherford, Caroline Marsh, Michaela Merrill, Michael Groner, Jason Hurd, Dylan Secoy, Kevin Jenkins, Sean Doyle, Michael Simonds, Anthony Connolly, Nathan Wielosinski, Brandan Gallant, and Howard Brooks.

(*Id.*)

RFPD No. 10

> All records referring or relating to any allegations of prior incidents of physical or sexual assault committed by Francis Lajoice.

(*Id.*)

RFPD No. 19

> The entire file on Francis Lajoice maintained by the Department of Corrections and/or the Southern State Correctional Facility.

(*Id.* at 12.)

### 1. Personnel Files of Defendant Rutherford and 12 Nonparty Correctional Employees; Prior Complaints against All Defendants and 12 Nonparty Correctional Employees (RFPD Nos. 7, 8)

Cameron argues that the personnel files of Defendant Rutherford and 12 nonparty correctional employees, as well as any complaints made against Defendants Rutherford, Menard, and Potanas, or the same 12 correctional employees, are relevant to her failure-to-protect claim because these individuals were "directly responsible to protect [Cameron] from an unreasonable risk of harm and are under the direction and control of the defendants." (Doc. 44 at 7.) In Cameron's view, therefore, the "job performance" and "disciplinary" records of these individuals are highly relevant to her claim. (*Id.*) Defendants contend that the requested information is irrelevant to Cameron's individual-capacity claims against Defendants Menard and Rutherford for failure to protect, and that the requested documents contain highly personal information that could create serious security risks if disclosed. (Doc. 49 at 5.) Defendants further object that the

8

requests are not limited to the incident at issue or to any specific time frame. (*Id.*) According to Defendants, these requests are improper to the extent that they seek the personnel files of nonparties and correctional employees who were not directly involved in the subject altercation. (*Id.* at 5–6.) Defendants additionally argue that the personnel file of Defendant Rutherford is irrelevant, given that Cameron's Complaint "call[s] into question Defendant Rutherford's operational decisions, not personnel issues specific to him." (*Id.* at 6.)

In support of her claimed entitlement to the requested documents, Cameron relies in part on 12 V.S.A. § 1691a(c), which sets forth the procedure under state law for discovery of employee personnel records in civil actions. "[Section 1691a] states that it is the policy of Vermont that an employee be given prior notice and an opportunity to object to production of his or her personnel records, and outlines procedures for doing so." *Turner v. Vermont Ctr. for the Deaf & Hard of Hearing, Inc.*, Case No. 2:02-CV-251, 2003 WL 27380992, at *4 (D. Vt. Oct. 1, 2003). However, "by its own terms[,] § 1691a applies only to civil actions commenced pursuant to Rule 3 of the Vermont Rules of Civil Procedure," and not to actions filed in federal court "pursuant to the Federal Rules of Civil Procedure." *Id.* at *5 (citing 12 V.S.A. § 1691a(b)(1)). Therefore, 12 V.S.A. § 1691a(c) does not apply to this federal action brought under 42 U.S.C. § 1983.

Applying Federal Rule of Civil Procedure 26(b), the Court must assess the relevance of the requested information with reference to the law governing the asserted claim. In order to prove her Eighth Amendment claim for failure to protect, Cameron must demonstrate that "[her] conditions of confinement presented a substantial risk of serious harm, and . . . prison official[s] w[ere] deliberately indifferent to [her] safety." *Seifert v. Corr. Corp. of Am.*, No. 2:09 CV 119, 2010 WL 446969, at *5 (D. Vt. Feb. 1, 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Cameron alleges that Defendants knew that she is a transgender female, and that as a

result of being a transgender female, she faced a substantial risk of serious harm if she was placed in the male population at SSCF. (Doc. 1 at 2–4, ¶¶ 11, 14, 20.) Cameron alleges that the assault on December 21, 2015 occurred because Defendants deliberately placed her in the facility's male population knowing that she would be exposed to serious risk of harm. The Court assesses the relevance of the requested discovery against this background.

Cameron broadly requests the complete personnel files of Rutherford and the 12 correctional employees who responded to the attack. She also broadly requests any and all documentation concerning any formal or informal complaints made against those 12 correctional employees, as well as Defendants Rutherford, Potanas, and Menard. However, Cameron has not provided the "necessary linkage" between the discovery sought and her claims. *Palm Bay Int'l, Inc.*, 2009 WL 3757054, at *2. Specifically, she has not demonstrated the relevance to the failure-to-protect claim of the complete non-time-restricted personnel files—including hiring and training information, performance assessments, assignments, medical and psychiatric reports, and disciplinary records—of every correctional officer who responded to the altercation between Lajoice and Cameron. She also has not demonstrated the relevance of the requested complaint documentation to the claim.

Courts have permitted discovery of correctional officers' personnel files, and records of complaints against correctional officers, in civil rights cases, when the discovery is sought from correctional officers who were named as defendants in the case and who were alleged to have been directly involved in the relevant altercation, or to have had information about that altercation before it occurred. *See, e.g.*, *Henry v. Hess*, No. 11 Civ. 2707(KMK)(GAY), 2012 WL 4856486, at *1 (S.D.N.Y. Oct. 12, 2012) (holding that complaints of misconduct and disciplinary records that were filed against a defendant police officer "would be subject to discovery," whether substantiated or unsubstantiated, so long as they are "similar to the

allegations in the civil action against [the officer]"); *Sowell v. Chappius*, No. 07-CV-6355, 2010 WL 1404004, at *1 (W.D.N.Y. Mar. 31, 2010) (prior complaints made against defendants are discoverable in § 1983 civil rights actions so long as they are similar to the constitutional violations alleged in the complaint or are relevant to defendant's truth or veracity); *Ferguson v. City of New York*, No. 97 Civ.1169(SAS)(THK), 1997 WL 580689, at *1–2 (S.D.N.Y. Sept. 18, 1997) (portions of personnel records that contain "performance reviews and/or disciplinary records" of defendant correctional officer were subject to discovery where claims of excessive use of force and supervisory liability for negligent hiring and negligent retention were alleged); *Cincotta v. City of New York*, No. 83 Civ. 7506 (KTD), 1984 WL 1210, at *3 (S.D.N.Y. Nov. 14, 1984) (in civil rights action against police officer and city, alleging that officer assaulted and unjustifiably arrested plaintiff, limited production of personnel files of defendant officer allowed); *Inmates of Unit 14*, 102 F.R.D. at 128–29 (production of personnel records of defendant correctional officers allowed in civil rights action against correctional officers alleging pervasive pattern and practice of unlawful assault, intimidation, and harassment); *Smith v. Crones*, No. 2:07-cv-00964 ALA (P), 2009 WL 1809919, at *4 (E.D. Cal. June 24, 2009) (allowing discovery of particular portions of personnel files of defendant correctional officers who were accused of using excessive force against plaintiff).

In contrast to the above cases, with the exception of Defendant Rutherford, Cameron seeks the full personnel files of, and complaints against, nonparty correctional officers. Discovery is properly limited in the circumstances presented here. *See, e.g.*, *Ismail v. Cohen*, No. 85 CIV. 0121(PKL), 1986 WL 2186, at *3 (S.D.N.Y. Feb. 10, 1986) (court allowed limited production of a defendant officer's psychiatric records, but denied production of the same records "as they pertain to persons other than [the] defendant . . . , until such time as plaintiff can make a specific demonstration that his need for such information outweighs the privacy interests

the officers have in their psychiatric records"); *see Crenshaw v. Herbert*, 409 F. App'x 428, 430 (2d Cir. 2011) (finding district court did not abuse its discretion in state inmate's § 1983 action against correctional officers by denying inmate's motion to compel production of officer's personnel file, even if evidence of prior substantiated excessive force investigation existed, where defense counsel affirmed that file contained no relevant disciplinary records). Cameron has not shown the relevance of Rutherford's personnel file, or any complaints made against Rutherford, when her claim essentially questions Rutherford's possible role in placing Cameron in the male population generally, and next to Lajoice specifically. For the Court to find that the requested personnel files and complaints are relevant to Cameron's failure-to-protect claim, the documents would have to potentially include information indicating or tending to indicate that Defendants were aware of an increased risk to a transgender female inmate like Cameron due to her being housed with male inmates as opposed to female inmates and being placed in a cell near inmate Lajoice. Cameron has not made this showing.

Even in those cases where courts have allowed the discovery of personnel files and complaints pertaining to correctional officers named as defendants, the discovery requests were limited as to time and scope. *See, e.g.*, *Brown v. Dobler*, Case No. 1:15-cv-00132-CWD, 2015 WL 9581414, at *5 (D. Idaho Dec. 29, 2015) (in case involving claims against correctional employees for retaliation for engaging in protected activity and failure to protect from harm, court found that discovery requests seeking the personnel files of defendant correctional employees were "much too broad," and therefore limited the responses to "situations regarding [the p]laintiff's specific claims"). Courts distinguish between general requests for personnel files and requests for specific information within a defendant's personnel file that indicates conduct relevant to allegations in the pending lawsuit. *Id*. ("[I]f a [d]efendant had been investigated for his or her conduct in relation to another inmate's complaint about a failure to protect or

retaliation claim within one year before [the p]laintiff's incident, then that investigation might well be relevant. However, any disciplinary actions or investigations against any of the [d]efendants that do not relate to any of [the p]laintiff's current claims are not relevant and are subject to an appropriate objection on that basis.").

Furthermore, the Court must consider that the records Cameron requests include highly personal information that, if released, could create serious security risks to both correctional officers and inmates. *See Smith v. Goord*, 222 F.R.D. 238, 242–43 (N.D.N.Y. 2004) ("To be sure, defendants in civil rights actions—particularly those brought by inmates in state correctional facilities—possess legitimate privacy interests[,] which militate against indiscriminate disclosure of inherently personal information concerning those employees and their families."); *Ruffino v. Faucher*, No. 3:11-cv-297 (VLB), 2012 WL 3637636, at *1 (D. Conn. Aug. 22, 2012) (recognizing concern that "disclosing personnel information [of correctional officers] to inmates could lead to misuse of that information by the inmate," and noting that "information regarding a correctional officer's disciplinary history could be used to obtain power over the correctional officer or to obtain drugs or weapons from him").

Therefore, when courts do allow discovery of personnel files of, or complaints against, correctional officers, the information is generally disclosed subject to protective order. *See Goord*, 222 F.R.D. at 239 (ordering production of personnel files including disciplinary records of defendant police officers and noting that "concerns associated with disclosure of th[e] documents can be addressed adequately through the entry of an appropriate protective order"); *Inmates of Unit 14*, 102 F.R.D. at 129 (allowing discovery of personnel files of defendant correctional officers but prohibiting inmates from seeing any part of files and denying request to allow inmates' attorneys access to home addresses, family names, and payroll records of correctional officers); *Crones*, 2009 WL 1809919, at *4 ("With respect to [d]efendants'

personnel files, the scope . . . must be limited to those portions of [the] . . . files that contain information concerning the alleged incident . . . , and files that contain information regarding prior complaints of excessive force used by the officers involved in the . . . incident, made during the two years preceding the alleged incident.  If [the p]laintiff is requesting grievances and complaints filed by other inmates against the [d]efendants, he must include . . . an explanation as to how the evidence is relevant to his claims.").

Cameron has not demonstrated how complaints brought by any inmate, regarding any situation or subject, made at any time and in any DOC facility, against any of the Defendants or the correctional officers who responded to the incident, might assist her in determining whether the named Defendants were deliberately indifferent to the risks posed to Cameron by housing her with male instead of female inmates at SSCF and by placing inmate Lajoice in a cell next to Cameron.  Cameron also has not shown how the full, non-time-restricted personnel files—which include hiring and training information, performance issues, assignments, medical and psychiatric reports, and disciplinary records—of every correctional officer who responded to the incident, are relevant to Cameron's failure-to-protect claim.  It is not clear how any of these mostly private records of nonparties (with the exception of Defendant Rutherford) could be used to show knowledge on behalf of any of the three named Defendants regarding an alleged risk of harm to Cameron, which was posed by male inmates in general or by inmate Lajoice in particular.  Perhaps these records may reveal Defendants' knowledge of a risk of harm to Cameron *that was posed by SSCF correctional employees*, but that is not at issue in Cameron's Complaint.  Absent a specific showing of why the requested documents are relevant to her claim, Cameron cannot demonstrate her entitlement to the discovery.  *Evans v. Calise*, No. 92 Civ 8430 (PKL), 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994) ("The party seeking the discovery must make a prima facie showing[] that the discovery sought is more than merely a fishing

expedition."); *see Contemp. Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) ("Where a plaintiff fails to produce any specific facts whatsoever to support a[n] . . . allegation, a district court may, in its discretion, refuse to permit discovery . . . .").

Furthermore, Cameron's broad request for "any formal or informal complaint" made against Defendants Rutherford, Potanas, and Menard, as well as against the 12 non-defendant correctional officers imposes an undue burden on Defendants. (Doc. 44 at 7.) Courts have recognized the significant burden associated with collecting complaints against correctional officers when the complaints are maintained under the name of the inmate filing the complaint or grievance rather than the name of the individual correctional officer. *See Shapard v. Attea*, No. 08-CV-6146 CJS, 2014 WL 4402200, at *3 (W.D.N.Y. Sept. 5, 2014) (where the requested records related to defendant correctional officers, the court noted a "clear trend within this Circuit" to deny production of inmate grievances filed against defendant correctional officers "on the ground that it would be unduly burdensome due to the fact that they are cataloged by inmate and not by [DOC] staff"); *Dorsey v. New York*, No. 10-CV-744F, 2011 WL 4529115, at *1 (W.D.N.Y. Sept. 28, 2011) ("It has been repeatedly held by this court that because inmate grievances and complaints filed against DOCS employees are filed according to the inmates making the grievances or complaints, the search required to identify the DOCS employees against whom such grievances or complaints are made would be unduly burdensome and time-consuming, and that such burden would outweigh any benefits provided by the requested discovery.").

The Rutherford Affidavit states that grievances are entered into the Vermont DOC database by an inmate's name, not by a staff member's name. (Doc. 49-6 at 2, ¶ 4.) The Affidavit further notes that 7,834 grievances have been filed at SSCF since 2015. (*Id.* at 3, ¶ 6.) Given that Cameron's request does not include any time limit or date range, Defendants would

likely have to search the grievance databases at other DOC facilities as well because some of the individuals listed in the request worked at other facilities prior to their employment at SSCF. (*Id*. ¶¶ 6–7.) Rutherford estimates such an expanded search would add approximately 4,865 additional grievances to the potentially responsive list of documents. (*Id*. ¶ 6.) The thousands of grievances could not be filtered electronically for the individuals listed in RFPD No. 8. Rather, individual review of each grievance would be necessary to isolate responsive documents. (*Id*. ¶ 5.) Therefore, the Court denies Cameron's request to compel Defendants to produce all inmate complaints made against Defendants or the 12 nonparty correctional officers listed in RFPD No. 8.

Accordingly, the Court DENIES Cameron's requests for Defendants to provide further responses to RFPD Nos. 7 and 8.

### 2. Inmate Lajoice's Prison File and Records of Prior Incidents of Assault by Lajoice (RFPD Nos. 10, 19)

Cameron seeks "[a]ll records referring or relating to any allegations of prior incidents of physical or sexual assault committed by Francis Lajoice" (RFPD No. 10), as well as "[t]he entire file on Francis Lajoice maintained by the [DOC] and/or [SSCF]" (RFPD No. 19). (Doc. 49-3 at 12.) Cameron contends these records "directly relate to . . . the violent assault she endured in prison at the hands of Lajoice," who was "previously convicted of domestic assault." (Doc. 44 at 9.) According to Cameron, Lajoice's history of violence, and Defendants' knowledge of that history, "is directly relevant to the allegations in this matter." (*Id.*) Defendants respond that production of the requested records would violate 28 V.S.A. § 107(b)(2), and its implementing regulations, which together limit the disclosure of inmate records. (Doc. 49 at 7–8 (citing Doc. 49-5 (APA rule limiting release or inspection of inmate records, in recognition of "confidentiality, health, safety, security, and rehabilitation of offenders and inmates")).)

In relevant part, 28 V.S.A. § 107(b) provides:

Offender and inmate records are exempt from public inspection and copying under the Public Records Act and shall be kept confidential, except that the [DOC]:

(1) Shall release or permit inspection of such records if required under federal or State law . . . .

(2) Shall release or permit inspection of such records pursuant to a court order for good cause shown or, in the case of an offender or inmate seeking records relating to him or her in litigation, in accordance with discovery rules.

According to Defendants, this statute "limits the disclosure of records to the inmate that is the subject of the records," and "does not permit disclosure of an offender's file to any other individual under any circumstance." (Doc. 49 at 8.) Apart from the statutory basis of their objection, Defendants have advised Cameron that DOC has no records of any prior incidents between Cameron and Lajoice, or any knowledge of any prior incidents between them. (*Id.*) Cameron's requests to produce "[a]ll records" regarding allegations of any prior incidents of assault committed by Lajoice, as well as DOC's "entire file" on Lajoice, are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. (Doc. 44 at 8.)

The Court must consider the DOC's interest in maintaining the confidentiality of inmate records, and accord the Department "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Moreover, the Court bears in mind the Second Circuit's longstanding recognition that inmates have a constitutional right to privacy protecting against unwarranted disclosure of their medical records and other sensitive information. *See, e.g.*, *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999); *Jean-Laurent v. Lane*, No. 9:11-CV-00186(NAM/TWD), 2016 WL 4775742, at *26 (N.D.N.Y. Aug. 18, 2016) (according due deference to articulated New York DOC practices regarding

confidentiality and nondisclosure of records such as "[an]other inmate's misbehavior report"), *report and recommendation adopted*, 2016 WL 4768828 (N.D.N.Y. Sept. 13, 2016).

Nonetheless, documents relating to assaults committed by Lajoice are potentially relevant to this action because Cameron contends that Defendants were deliberately indifferent to the serious threat Lajoice posed to Cameron's safety while Cameron was housed in a cell next to Lajoice at SSCF. To demonstrate such indifference, Cameron must show that Defendants knew of and disregarded the excessive risk Lajoice presented to Cameron's safety. *See Farmer*, 511 U.S. at 837. As the Supreme Court has explained:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Id.* at 842–43 (internal quotation marks omitted).

To the extent such records exist, Cameron should be permitted discovery documenting past assaults by Lajoice against transgender females or against females generally, as such evidence would be relevant to the claim that Defendants knew Cameron faced a substantial risk of serious harm when Lajoice was placed in a cell adjacent to Cameron. (Doc. 1 at 4, ¶ 20.) *See Hayes v. Corr. Corp. of Am.*, No. 1:09-cv-00122-S-BLW, 2011 WL 3962153, at *2–3 (D. Idaho Sept. 7, 2011) (citing *Dykes v. Morris*, 85 F.R.D. 373, 376–77 (N.D. Ill. 1980)). Defendants have (a) advised Cameron that they have no knowledge of prior incidents *between Cameron and Lajoice*, and (b) produced to Cameron her own DOC disciplinary record, which apparently contains no reference to Lajoice prior to the subject altercation. (*See* Doc. 49 at 8.) However, Defendants do not appear to have produced documents that relate to any assaults Lajoice may

have committed against other transgender females or females generally. This information is relevant to Cameron's claim.

In permitting discovery on this issue, the Court must balance Cameron's right to discover relevant evidence, Defendants' and the DOC's legitimate concerns for institutional security, the DOC's policies regarding confidentiality of inmate records, and Lajoice's right to privacy. Given these considerations, the Court ORDERS as follows: To the extent they are contained in the DOC's inmate file on Lajoice, Defendants Menard and Rutherford shall produce documents that reference or relate to any assaults committed by Lajoice against transgender females or females generally during the two-year period prior to the altercation that is the subject of this lawsuit. Before production, Defendants may redact from the documents any information that is asserted to be sensitive or confidential (including but not limited to information regarding Lajoice's or another inmate's private medical or mental health information). If redactions are made, Defendants must also produce a privilege log indicating the type of information redacted from each document and the reason for the redaction. Once produced, these documents are to be examined exclusively by Cameron's counsel for the purpose of the pending litigation and must be handled with the strictest confidentiality. No reproductions may be made. In the event any of these documents are submitted to the Court, they should be filed with a motion to seal. Upon the conclusion of this action, all documents produced pursuant to this directive, if any, must be returned to Defendants.

With respect to Cameron's requests for additional documents regarding allegations of prior assaults committed by Lajoice or contained in the DOC/SSCF's inmate file on Lajoice, the Court finds that Cameron has not demonstrated her entitlement to discover these records and therefore DENIES the requests.

### C.    Request to Enter Prison

Cameron requests an order compelling Defendants to allow her counsel to enter SSCF "for the purpose of inspecting, measuring, surveying, photographing[,] and/or video recording." (Doc. 44 at 9.)  Cameron argues that entry into the prison is required for her to "hav[e] a full understanding of the layout of the facility and its management and oversight capabilities and limitations." (*Id.* at 10.)  Defendants resist this request on three grounds.  They first contend that a site visit would serve no purpose because the altercation did not occur "by ambush or some other contrived attack that relied on the physical layout of the building as a component of a plan." (Doc. 49 at 13.)  Defendants further explain that DOC security protocols prohibit use of video recording equipment and any of the other tools necessary to conduct the requested site inspection. (*Id.* (citing Docs. 49-7, 49-8).)  Finally, Defendants claim that Cameron's counsel should not be allowed to enter the prison due to the risk of introducing COVID-19 into the prison. (*Id.* at 13–14.)

Under Federal Rule of Civil Procedure 34(a)(2), a party may serve on another a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."  Generally, "[a]ny document or thing that is relevant to the claim or defense of any party" may be inspected pursuant to Rule 34(a)(2), unless (a) it is privileged, has been prepared in anticipation of litigation or for trial, or reveals facts known and opinions held by experts; or (b) "there are special reasons why inspection would cause annoyance, embarrassment, oppression, or an undue expense burden." *Chunn v. Edge*, No. 20-cv-1590 (RPK), 2020 WL 1872523, at *1 (E.D.N.Y. Apr. 15, 2020) (alteration in original) (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 2206 (3d ed. 2020)).  An inspection may be denied as unduly burdensome if "the burdens and dangers created

by the inspection" outweigh "the degree to which the proposed inspection will aid in the search

for truth." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 961 (2d

Cir. 1983) (internal quotation marks omitted).

The Court finds that the requested site inspection creates burdens and dangers to the DOC

that outweigh the value of an inspection to Cameron in this litigation. Cameron asserts that an

inspection is relevant to her claim because it would aid her counsel in "understand[ing] the

layout and logistics of the areas where the harassment and physical beating of [Cameron]

occurred," and in "preparing her examination of witnesses in deposition and at trial." (Doc. 44

at 10.) It is not clear, however, how the floorplan or physical layout of the prison facility is

relevant to any particular issue in this case. There is no allegation that Lajoice or any other

inmate hid or lay in wait prior to attacking or harassing Cameron. If counsel seeks to gain a

better understanding of the general layout of the area where the subject altercation and

harassment occurred, counsel may request that Defendants produce floorplans, charts,

photographs, or other visual representations of the relevant area, and those representations may

be the subject of questioning in deposition. *See, e.g.*, *Silverstein v. Federal Bureau of Prisons*,

Civil Action No. 07-cv-02471-PAB-KMT, 2009 WL 1451684, at *3 (D. Colo. May 20, 2009).

The Court therefore DENIES the request to allow Cameron and her counsel to enter

SSCF for the purpose of inspecting, measuring, surveying, photographing, or video recording the

areas where Cameron was allegedly harassed and beaten.

### D. Acknowledgment to Interrogatory Responses

Cameron contends that Defendants Menard and Rutherford have not properly signed their

responses under oath, in violation of Federal Rule of Civil Procedure 33(b)(3), making the

responses "useless for purposes of impeachment." (Doc. 44 at 10.) Defendants counter that the

responses were in fact signed under oath by "the individual making the responses, the [DOC]

agent, Charles Remick."  (Doc. 49 at 8–9.)  Relying on Federal Rule of Civil Procedure 33(b)(1)(B), Defendants explain that Cameron's Interrogatories define "You" and "Yours" to include the DOC and its agents, making it proper for the DOC agent to have signed the responses.  (*Id.* at 9.)

Federal Rule of Civil Procedure 33(b) provides that interrogatories addressed to an individual party must be "answered separately and fully in writing under oath."  Subsection (b)(5) of the Rule provides that "[t]he person who makes the [interrogatory] answers must sign them."  *See McDougall v. Dunn*, 468 F.2d 468, 472 (4th Cir. 1972) ("Interrogatories addressed to an individual party must be answered by that party." (internal quotation marks omitted)); *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) ("Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses.").  Therefore, had the subject Interrogatories been directed to only Defendants Menard and Rutherford, they each would have been obliged to sign them.

However, notwithstanding the fact that the DOC is not named as a defendant in the Complaint (*see* Doc. 1 at 1), the Interrogatories themselves define the terms "Defendant," "you," or "your" to include not only Defendants Menard and Rutherford (and Defendant Potanas), but also "the Vermont Department of Corrections and the Southern State Correctional Facility, its agencies, and all representatives acting or purporting to act on its behalf with respect to any matter inquired about in these interrogatories including, but not limited to, all employees, attorneys, consultants, agents, adjusters, investigators, or any other representatives."  (Doc. 49-3 at 4.)  Rule 33(b)(1)(B) states that, "if th[e] party [to whom interrogatories are directed] is . . . a governmental agency," the interrogatories must be answered "by any officer or agent, who must furnish the information available to the party."  Given Cameron's inclusion of the DOC in the

definition of "Defendant" in her Interrogatories, it was proper for the DOC's agent, Charles

Remick, to have signed the responses.  *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*

*v. Coventry First LLC*, No. 09 Civ. 1086 (VM) (DF), 2010 WL 11570643, at *1 (S.D.N.Y. Nov.

5, 2010) ("Where a party is a . . . governmental agency, . . . any officer or agent may answer and

sign responses to interrogatories." (second omission in original) (emphasis and internal quotation

marks omitted)).  Cameron does not provide any authority to the contrary.  (*See* Doc. 44 at 10.)

Therefore, the Court DENIES Cameron's request to order Defendants Menard and

Rutherford to personally sign their responses to Cameron's Interrogatories under oath.  If

Cameron seeks responses signed by Menard and Rutherford individually, she may serve

interrogatories directed to them exclusively, or revise her already-served Interrogatories to define

"Defendant" to include only Menard and Rutherford.[2]  Alternatively, Cameron could submit

additional interrogatories to Defendants requesting the names of those individuals who have

personal knowledge of each response.  *See Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469,

1482 (D.C. Cir. 1995) ("If the party propounding the interrogatories wants to know the names of

the individuals with personal knowledge of each response, it can always ask for them as part of

the interrogatories.").

## III.   Future Discovery Schedule

Given the issues addressed in Cameron's Motion to Compel, Cameron asserts that she

"has not been able to further develop the case and progress with discovery."  (Doc. 44 at 11,

¶ 25.)  Therefore, she seeks an order compelling Defendants Menard and Rutherford to extend

the "upcoming deposition[3] and expert deadlines."  (*Id.* ¶ 27.)  Defendants oppose the request,

---

[2] Defendants have apparently offered Cameron the opportunity to serve interrogatories directed specifically to Defendants Menard and Rutherford.  (Doc. 49 at 9.)

[3] Cameron's deposition was taken on September 29, 2020.  (*See* Doc. 49 at 2.)  The Court is unaware of any other depositions having occurred in this case.

arguing that there is no reason to postpone discovery pending resolution of the issues addressed herein. (Doc. 49 at 14.)

Many of the deadlines that are referenced in the parties' most recent Stipulated Discovery Schedule/Order (Doc. 41) have not transpired due to the issues raised in the pending Motion. Moreover, given the Court's order directing Defendants Menard and Rutherford to produce particular documents relating to assaults committed by Lajoice against transgender females or females generally, both parties will need additional time to complete discovery. Therefore, Cameron's request for an extension of time to complete discovery is GRANTED. Within 14 days of the filing of this Opinion and Order, the parties shall meet and confer and jointly file with the Court a revised stipulated discovery schedule that accounts for the additional time required for Defendants to gather and produce the Lajoice documents, and for Cameron to review them.

## Conclusion

For these reasons, Plaintiff's Motion to Compel (Doc. 44) is GRANTED in part and DENIED in part, as follows:

1. The Court DENIES Cameron's requests to deem Defendants' objections waived and to order service of unqualified responses.

2. The Court DENIES Cameron's requests regarding the personnel files of, and documents related to any complaints made against, 13 SSCF correctional employees including 12 correctional officers who responded to the subject attack and Defendant Rutherford (RFPD Nos. 7, 8).

3. The Court DENIES in part and GRANTS in part Cameron's requests regarding records relating to prior assaults committed by inmate Lajoice and the DOC/SSCF's file on Lajoice (RFPD Nos. 10, 19). Specifically, discovery is permitted as follows:

To the extent they are contained in the DOC's inmate file on Lajoice, Defendants Menard and Rutherford shall produce documents that reference or relate to any assaults committed by Lajoice against transgender females or females generally during the two-year period prior to the altercation that is the subject of this lawsuit. Before production, Defendants may redact from the documents any information that is asserted to be sensitive or confidential (including but not limited to information regarding Lajoice's or another inmate's private medical or mental health information). If redactions are made, Defendants must also produce a privilege log indicating the type of information redacted from each document and the reason for the redaction. Once produced, these documents are to be examined exclusively by Cameron's counsel for the purpose of the pending litigation and must be handled with the strictest confidentiality. No reproductions may be made. In the event any of these documents are submitted to the Court, they should be filed with a motion to seal. Upon the conclusion of this action, all documents produced pursuant to this directive, if any, must be returned to Defendants.

Cameron's requests for additional documents regarding allegations of prior assaults committed by Lajoice or contained in the DOC/SSCF's inmate file on Lajoice are DENIED.

4. The Court DENIES Cameron's request to allow Cameron and her counsel to enter SSCF for the purpose of inspecting, measuring, surveying, photographing, or video recording the areas where Cameron was allegedly harassed and beaten.

5. The Court DENIES Cameron's request to order Defendants Menard and Rutherford to personally sign their responses to Cameron's Interrogatories, but affords Cameron the opportunity to serve additional interrogatories, this time directed to the individual Defendants exclusively and/or requesting the names of those individuals who have personal knowledge of each response.

Given the above ruling regarding the Lajoice documents, the Court GRANTS Cameron's request for an extension of time to complete discovery, and ORDERS that, within 14 days of the filing of this Opinion and Order, the parties shall meet and confer and jointly file with the Court

a revised stipulated discovery schedule that accounts for the additional time required for Defendants to gather and produce these documents, and for Cameron to review them.

Dated at Burlington, in the District of Vermont, this 6th day of July 2021.

/s/ Kevin J. Doyle
United States Magistrate Judge