UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| David "Cammie" Cameron,<br><br>    Plaintiff,<br><br>    v.<br><br>Lisa Menard, Mark Potanas,<br>and Joshua Rutherford,<br><br>    Defendants. | Civil Action No. 5:18–cv–204 |

## OPINION AND ORDER
(Doc. 59)

This is a civil rights action brought by Plaintiff David "Cammie" Cameron, a transgender female incarcerated at the Southern State Correctional Facility (SSCF) during the relevant period, against Defendants Lisa Menard, the former Commissioner of the Vermont Department of Corrections (DOC); Mark Potanas, the former Superintendent of SSCF; and Joshua Rutherford, the former Chief of Security at SSCF. (Doc. 1.) Cameron alleges that Defendants' denial of her request to be housed with female inmates and their decision to instead house her at an all-male facility in a cell next to inmate Francis Lajoice, resulted in Lajoice attacking her and inmates and staff at SSCF taunting and harassing her repeatedly. (*Id.* at 3.)

In September 2019, the Court dismissed several claims from Cameron's Complaint,[1] leaving only the claim that Defendants violated Cameron's Eighth Amendment rights by failing to protect her from a substantial risk of serious harm. (*See* Docs. 18, 19; *see also* Doc. 1 at 4–5.)

---

[1] The dismissed claims alleged that Defendants failed to adequately train and supervise SSCF correctional officers and violated state negligence and false-imprisonment laws. (*See* Doc. 18 at 30–37.)

In July 2021, the Court granted in part and denied in part Cameron's Motion to Compel Discovery and to Extend Discovery Deadlines. (Doc. 53.) In relevant part, the Court's Opinion and Order: (1) denied Cameron's requests for production of personnel files of, and documents related to, any complaints made against 13 SSCF correctional employees, including Defendant Rutherford and 12 correctional officers who responded to Lajoice's attack of Cameron (*id.* at 24); and (2) granted in part Cameron's requests for production of records relating to prior assaults committed by Lajoice and the DOC/SSCF's file on Lajoice, limited to production of only those documents "that reference or relate to any assaults committed by Lajoice against transgender females or females generally during the two-year period prior to the altercation that is the subject of this lawsuit" (*id.* at 25).

The parties have since exchanged responses to initial discovery and conducted the depositions of Cameron, Defendants, and six correctional officers. Before the Court is Cameron's second Motion to Compel and to Extend Discovery Deadlines, in which she requests an order compelling Defendants to answer several Requests to Admit and to provide additional deposition testimony in order to answer certain questions to which Defendants objected during their depositions.[2] (Doc. 59.) Cameron contends that defense counsel improperly instructed Defendants and witnesses at their depositions not to answer "highly relevant and permissible questions regarding [Lajoice's] assault on [Cameron], and regarding the days and weeks leading up to [that assault]." (*Id.* at 2.) According to Cameron, defense counsel's objections were erroneously based on the Court's July 2021 decision addressing Cameron's first Motion to Compel. (*Id.*)

---

[2] The request to extend discovery deadlines is moot, as the Court granted the parties' Stipulated Motion to Amend the Discovery Schedule on June 29, 2022 (*see* ECF Order No. 64).

Defendants oppose the Motion to Compel, arguing that the Court properly determined in its July 2021 decision that Cameron failed to establish the relevancy of the requested information, and that nothing has changed in the case since then to make the same information relevant. (Doc. 62 at 1–3.)

As explained below, Cameron's Motion to Compel is granted in part and denied in part.

## Discussion

### I.  Legal Standard

"Federal policy favors broad discovery in civil rights actions," and "[i]t has been strongly stated that suits under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather than a determination that the truth shall remain hidden." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984). Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Generally, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In the discovery context, the relevance standard is broadly construed "to encompass any matter that bears on, or that reasonably could lead to [an]other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Discoverability is determined by the broad standard of relevance.").

Notwithstanding the broad scope of relevance in the discovery phase of a case, the court "must limit the frequency or extent of discovery" if it determines that the proposed discovery "is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911(HB)(HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("Although broad, discovery is obviously not limitless, and to be discoverable the information sought must be relevant to a claim or defense . . . of any party." (citing Fed. R. Civ. P. 26(b)(1))). The party seeking discovery bears the initial burden of proving the discovery is "relevant." *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017); *see Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, No. CV 09–601(ADS)(AKT), 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009) (noting that "it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case"); *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (stating that it is the discovering party who "has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action"). Once relevance has been shown, "it is up to the responding party to justify curtailing discovery." *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011).

The court "enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (internal quotation marks omitted); *see In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) ("A district court has wide latitude to determine the scope of discovery, and [the appellate court] ordinarily defer[s] to the discretion of district courts regarding discovery matters." (internal quotation marks omitted)).

4

**II.     Analysis**

The sole remaining claim in this case is Cameron's Eighth Amendment failure-to-protect claim, which alleges that Defendants' placement of Cameron in an all-male prison facility and in a cell next to inmate Lajoice resulted in Lajoice's attack of Cameron, causing physical injury, pain, and emotional distress to Cameron.  To prove that claim, Cameron must demonstrate that (a) as a transgender female, being housed in a male prison facility in a cell next to Lajoice placed her at a substantial risk of serious harm, and (b) Defendants were deliberately indifferent, meaning they knew of and disregarded that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding that, in cases based on prison official's failure to prevent harm, Eighth Amendment violation occurs "only when" inmate shows he was incarcerated under conditions posing an objectively "substantial risk of serious harm," and that officials subjectively displayed "deliberate indifference to inmate health or safety"); *id.* at 837 (defining "deliberate indifference" in this context as "know[ing] of and disregard[ing] an excessive risk to inmate health or safety"); *Seifert v. Corr. Corp. of Am.*, No. 2:09 CV 119, 2010 WL 446969, at *5 (D. Vt. Feb. 1, 2010) (noting that, in order to prove Eighth Amendment claim for failure to protect, inmate must demonstrate that "conditions of confinement presented a substantial risk of serious harm, and . . . prison official[s] w[ere] deliberately indifferent to the inmate's safety").

Regarding the first element, courts in this Circuit have found that transgender female inmates "'belong[] to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates,' and thus [are] subject to a heightened risk of harm . . . in a male prison." *Manning v. Griffin*, No. 15-CV-3 (KMK), 2016 WL 1274588, at *7 (S.D.N.Y. Mar. 31, 2016) (quoting *Farmer*, 511 U.S. at 843); *see id.* at *9 (finding that plaintiff adequately alleged that each defendant was aware of a "general heightened risk of sexual assault faced by [p]laintiff

5

as a transgender woman in a male prison"); *see Powell v. Schriver*, 175 F.3d 107, 115 (2d Cir. 1999) ("In our view, it was as obvious in 1991 as it is now that under certain circumstances the disclosure of an inmate's . . . transsexualism could place that inmate in harm's way."); *Lojan v. Crumbsie*, No. 12 CV. 0320(LAP), 2013 WL 411356, at *4 (S.D.N.Y. Feb. 1, 2013) ("[T]he argument that more than mere knowledge of [p]laintiff's transgender status was required to put [d]efendant on notice of [p]laintiff's vulnerability is spurious."); *Stover v. Corr. Corp. of Am.*, No. 1:12-cv-00393-EJL, 2015 WL 874288, at *10 (D. Idaho Feb. 27, 2015) (finding on summary judgment that based on evidence defendants were aware that plaintiff is a transgender prisoner and that she was housed in an open dorm with up to 58 male sex offenders, "a jury could reasonably conclude that [d]efendants . . . subjectively drew the inference that [p]laintiff faced a substantial risk of serious harm at the hands of the . . . sex offenders").

Regarding the "deliberate difference" element, the plaintiff generally must allege that the defendant "knew of a prior altercation between the plaintiff and h[er] attacker, or of threats that had been made against the plaintiff." *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013). "Courts routinely deny deliberate indifference claims based upon surprise attacks." *Id.* (internal quotation marks omitted); *see JCG v. Ercole*, No. 11 Civ. 6844(CM)(JLC), 2014 WL 1630815, at *26 (S.D.N.Y. Apr. 24, 2014) (rejecting deliberate-indifference claim for injuries sustained from physical attacks that occurred while inmate was being taken to prison's "Special Housing Unit" because plaintiff did not "plead facts sufficient to suggest that prison conditions posed a generalized threat to the safety of all inmates or that there were other attacks against prisoners when being transferred to the [Special Housing Unit]" (internal quotation marks omitted)), *report and recommendation adopted*, 2014 WL 2769120 (June 18, 2014). Alternatively, the plaintiff may state a claim for deliberate indifference "based

6

on a failure to protect h[er] against a general risk of harm to all inmates at the facility." *Parris*, 947 F. Supp. 2d at 363. In that case, the plaintiff must allege that "the defendants knew of a history of prior inmate-on-inmate attacks *similar to the one suffered by the plaintiff* and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." *Id.* (emphasis added); *see Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) ("In failure to protect cases, [a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." (alteration in original) (internal quotation marks omitted)).

  **A.**  **Deposition Questions[3]**

    **1.**  **Question to Potanas Regarding Whether Another Correctional Officer Was Disciplined for Verbally Insulting Plaintiff**

Cameron contends that Defendant Potanas should respond to the following deposition question: "Do you know if Officer McKee was ever disciplined in connection with [an] investigation [into Plaintiff's complaints that Officer McKee verbally harassed her while she was incarcerated at SSCF]?" (Doc. 59-9 at 63.) Cameron asserts that this question seeks relevant information because it "relates to mistreatment of the plaintiff and whether or not that was tolerated or disciplined." (Doc. 59 at 4.) As the Court explained in its July 2021 Opinion and Order, however, for the requested information to be relevant to Cameron's failure-to-protect claim, the information "would have to potentially include information indicating or tending to indicate that Defendants were aware of an increased risk to a transgender female inmate . . . due to her being housed with male inmates as opposed to female inmates." (Doc. 53 at 12.)

---

[3] Although Cameron suggests that the disputed deposition questions cited in her Motion are merely "example[s]" of questions to which defense counsel raised improper objections (Doc. 59 at 4), the Court addresses only the specific discovery disputes identified in the Motion to Compel. As the moving party on a motion to compel discovery, Cameron must present to the Court the precise discovery issues for resolution.

Cameron has not shown how information regarding any disciplinary measures taken against a correctional officer in connection with Cameron's complaint that the officer verbally harassed her tends to show that Defendants knew of an alleged risk of harm to Cameron from male inmates in general or inmate Lajoice in particular at SSCF.[4]  (*See id.* at 14 ("It is not clear how any of these . . . records of nonparties . . . could be used to show knowledge on behalf of any of the three named Defendants regarding an alleged risk of harm to Cameron, which was posed by male inmates in general or by inmate Lajoice in particular.").)

Cameron contends that this deposition question seeks relevant information because "[i]f there is discipline of DOC personnel regarding their conduct towards [Cameron][,] that puts DOC supervisors on notice of a known threat to [Cameron]."  (Doc. 59 at 9.)  However, the "threat" to Cameron that is contemplated by the relevant deposition question is different from the threat at issue in this case.  This case is about a threat to Cameron's *physical safety* as a result of Defendants' placing her in a male prison and in a cell next to inmate Lajoice, which Cameron alleges resulted in Lajoice's assault of her.  By contrast, the deposition question—and other

---

[4] In Magistrate Judge Conroy's August 2019 Report and Recommendation, subsequently adopted by Chief Judge Crawford, the Court dismissed Cameron's general claims of harassment by SSCF correctional officers: "[G]eneralized claims that SSCF correctional officers threatened and harassed Cameron fall far short of rising to the level of conduct that violates the Eighth Amendment, nor does Cameron's Complaint describe how the correctional officers' alleged behavior caused her assault."  (Doc. 18 at 32 (citing *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (stating that not every push or shove violates a prisoner's constitutional rights); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (finding no constitutional violation by even the most reprehensible verbal harassment or profanity)).)  The Report and Recommendation further explained:

> Cameron's injury was caused by another inmate—Lajoice—and the gravamen of Cameron's Complaint is that, as a transgender female, being placed among the male inmates at SSCF created an unreasonable risk of harm that ultimately led to that injury.  In fact, Cameron's Complaint does not name a single correctional officer at SSCF, let alone specific correctional officers whose actions created the purportedly unconstitutional circumstances leading to Cameron's assault.  Absent such allegations, nothing in Cameron's Complaint connects her assault to acts or omissions committed by the SSCF correctional officers; accordingly, this Court cannot infer a causal connection between Cameron's injury and Defendants' alleged training and supervision of the SSCF correctional officers.

*Id.*

similar questions[5]—pertain to Cameron's complaints about SSCF correctional officers' alleged *verbal harassment*, including "inappropriate comments" (*id.* at 10), "disparaging remarks about the transgender population" generally (*id.*), "laugh[ing]" at inmates' yelling sexually harassing comments to Cameron (*id.*), and reference to Cameron as a "she or he or whatever" (*id.* at 11). Even if these allegations remain a part of this case after the Court's September 2019 decision to dismiss the Complaint's failure-to-train and failure-to-supervise claims (*see* Doc. 19; *see also* Doc. 18 at 30–34), verbal harassment and offensive comments do not rise to the level of a constitutional violation.  *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation . . . ."); *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) ("[R]udeness and name-calling does not rise to the level of a constitutional violation."); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("[M]ere allegations of verbal abuse, threats[,] or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action . . . ."); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called [the plaintiff] names . . . did not allege any appreciable injury and was properly dismissed."); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury[,] no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." (internal quotation marks omitted)); *Cole v. Tredway*, Case No. 14-CV-1059-MJR-RJD, 2016 WL 7118946, at *5 (S.D. Ill. Dec. 7, 2016) ("[T]he evidence before the Court—testimony that [p]laintiff complained regarding propositions, winking, and other sexually suggestive

---

[5] The Court does not rule on deposition questions that Cameron has not specifically identified in her Motion to Compel.  The Court cannot render a discovery ruling without a precise identification of the allegedly objectionable question and legal argument as to the relevance of the information she seeks.

gestures from other inmates—falls short of establishing that [d]efendant [prison employee] was aware of a substantial risk of bodily harm to [p]laintiff.").

Therefore, Defendants' awareness of correctional officers' alleged verbal harassment of Cameron or allowance of other inmates to verbally harass Cameron, is not relevant to Cameron's claim of an increased risk of assault to Cameron based on her placement in a male prison next to inmate Lajoice. As the Second Circuit has explained, "in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998). Cameron has not demonstrated how verbal harassment by nonparty correctional officers could have been a proximate cause of Cameron's physical injuries at the hands of inmate Lajoice.

Therefore, Defendant Potanas is not required to answer the question regarding whether Officer McKee was disciplined for verbally insulting Cameron.

### 2. Question to Defendant Potanas Regarding His 2015 Performance Review

Cameron next contends that Defendant Potanas should be required to respond to the following deposition question: "Do you remember [your 2015 performance] review . . . ?" (Doc. 59-9 at 95.) Although Cameron contends that this question would elicit "crucial and highly relevant deposition testimony" (Doc. 59 at 4), she does not explain the relevance of the anticipated responsive information to her claim. As the Court noted with respect to Defendant Rutherford's personnel file, "Cameron has not shown the relevance of [Defendant's] personnel file, or any complaints made against [Defendant], when her claim essentially questions [Defendant's] possible role in placing Cameron in the male population generally, and next to Lajoice specifically." (Doc. 53 at 12.) This observation applies equally to Defendant Potanas.

As Cameron has not shown the relevance of the requested information to her claim, Defendant Potanas is not required to answer this question.[6]

### 3. Questions Regarding What Type of Inmate Lajoice Was and Defendants' Knowledge of Lajoice's History of Violence in Prison

Defendants objected to the following series of questions posed by Cameron's counsel: "What type of an inmate was [Lajoice]? Was he difficult? Was he a model inmate? What type of inmate was he?" (Doc. 59-10 at 37.) Defendants noted that they had already disclosed to Cameron, in compliance with the Court's July 2021 decision, that Lajoice had no history of assaulting transgender females. (*Id.* at 38.) In Defendants' view, Lajoice's disciplinary history and his general behavior while in DOC custody was confidential and not subject to questioning at deposition. Cameron responds that "[t]ime and again during questioning, Plaintiff was deprived of her right to question the Defendants regarding their knowledge of Mr. Lajoice's history of violence while in prison." (Doc. 59 at 7.)

Information regarding Lajoice's general reputation as an inmate and history of violence in prison is relevant because if Lajoice had a reputation for violence against inmates in prison and Defendants knew that and placed Cameron in a cell next to Lajoice, such information would tend to show that Defendants were aware of an increased risk of harm to Cameron as a transgender female. As the Court has previously observed, "both the Supreme Court and the Second Circuit have acknowledged that, as a transgender female in the general male population,

---

[6] Under Federal Rule of Civil Procedure 30(c)(2), it is improper to instruct a witness not to answer a question on the basis of relevance. *See Weinrib v. Winthrop-Univ. Hosp.*, No. 14-CV-953 (JFB) (AKT), 2016 WL 1122033, at *2 (E.D.N.Y. Mar. 22, 2016) (noting that "lack of relevancy is not a proper basis for instructing a witness not to answer deposition questions"). The Rule permits an instruction not to answer, however, "when necessary . . . to enforce a limitation ordered by the court." Fed. R. Civ. P. 30(c)(2). The discovery at issue here pertains to the limits imposed in the Court's July 6, 2021 Opinion and Order on Plaintiff's Motion to Compel. (*See* Doc. 59 at 4–6 (quoting deposition testimony indicating dispute over meaning of July 6, 2021 Opinion and Order).) For purposes of this specific issue, the Court interprets the instruction not to answer as an effort "to enforce a limitation ordered by the court" under Rule 30(c)(2).

Cameron belongs to an identifiable group [of prisoners who are frequently singled out for violent attack by other inmates]." (Doc. 18 at 21–22 (citing *Farmer*, 511 U.S. at 849; *Powell*, 175 F.3d at 115).) The Court has also noted in a prior ruling in this case that an "obvious risk to Cameron is supported by DOC policy [432.01], which acknowledges that transgender inmates may be particularly vulnerable to assault." (*Id.* at 22 (citing Doc. 3-3 at 5, ¶ 2; Doc. 6-4 at 5, ¶ 2); *see* Doc. 59-8.) This risk arguably would be more acute if the transgender inmate was placed in a cell with or near an inmate who has a history of violence in prison.

The Court's July 2021 Order does not address this issue, as that decision addressed overly broad requests to produce documents; namely, requests for production of "[a]ll records referring or relating to any allegations of prior incidents of physical or sexual assault committed by Francis Lajoice" and "[t]he entire file on Francis Lajoice maintained by the [DOC] and/or [SSCF]." (Doc. 53 at 16.) As the July 2021 decision noted, such broad requests for production of documents have the potential to invade both the DOC's interest in maintaining the confidentiality of inmate records and Lajoice's right to privacy regarding his medical and other sensitive information. Therefore, the Court limited the required production. (*See id.* at 18–19.) By contrast, the discovery at issue here consists of targeted deposition questions to parties in this case about their own personal knowledge of Lajoice's history of violence in prison and general reputation as a prisoner. Cameron has sufficiently demonstrated that this is relevant discoverable information, and Defendants have not shown why such discovery should be limited.

    **B.**     **Requests to Admit**

Cameron also seeks an order compelling each Defendant to respond to two Requests for Admission. Those Requests ask Defendants to admit: (1) that "no correctional officer or DOC employee was disciplined in any way for the manner in which they supervised [Cameron]"; and

12

(2) that "no inmate was ever disciplined for the manner in which they treated or interacted with [Cameron]."[7] (Doc. 59-12 at 1, 3, 5.)

For the reasons explained above, Defendants are not required to respond to the first Request for Admission, as Cameron has not demonstrated the relevance of the requested information. Moreover, this Request appears to seek information related to Defendants' supervision claim, which the Court dismissed in its September 2019 decision. (*See* Doc. 19; Doc. 18 at 34 ("Cameron's second and third causes of action are entirely conclusory because Cameron fails to allege any facts from which this Court can infer that Defendants' failure to train and supervise the SSCF correctional officers caused Cameron's assault. Accordingly, the Court should dismiss those claims.").)

However, Defendants must answer the second Request for Admission, as Defendants' knowledge of male inmates having been disciplined for mistreating Cameron is relevant to whether Defendants were aware of an increased risk to Cameron due to being housed in an all-male prison in a cell next to inmate Lajoice.

## Conclusion

As explained above, Cameron's Motion to Compel (Doc. 59) is GRANTED in part and DENIED in part.

Dated at Burlington, in the District of Vermont, this 19th day of September 2022.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

---

[7] The Motion to Compel does not state the disputed Requests for Admission or explain specifically why Cameron is entitled to responses to the Requests. Additionally, although Cameron attaches the Requests for Admission to her Motion, the Court has not received Defendants' responses to the Requests. To the extent that the parties bring further discovery disputes to the Court for resolution, the briefing should identify the precise discovery sought, explain the relevance of the disputed discovery to the claim, and include authority in support of the parties' respective positions.